993 So.2d 1150 (2008)
J.A.B., Appellant,
v.
STATE of Florida, Appellee.
No. 2D07-1943.
District Court of Appeal of Florida, Second District.
November 5, 2008.
James Marion Moorman, Public Defender, and Pamela H. Izakowitz, Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Dale E. Tarpley, Assistant Attorney General, Tampa, for Appellee.
EN BANC
ALTENBERND, Judge.
J.A.B. appeals an order adjudicating her delinquent for battery and requiring her to pay restitution to the victim of the crime in the amount of $1479.09 at the rate of $50 per month, commencing on a specified date approximately four months after the entry of the restitution order. *1151 J.A.B. argues only that the trial court abused its discretion in setting the amount and payment schedule for restitution. We affirm. We have voted to consider this case en banc and to recede from R.S.M. v. State, 910 So.2d 361 (Fla. 2d DCA 2005); R.D.S. v. State, 844 So.2d 720 (Fla. 2d DCA 2003); and L.J.H. v. State, 627 So.2d 593 (Fla. 2d DCA 1993), to the extent that those cases suggest that a trial court issuing a restitution order with a monthly payment schedule against an unemployed juvenile cannot specify a commencement date for the payments but must make payment contingent upon the juvenile actually obtaining employment that would enable the juvenile to afford the payment. Rather, we now hold that the trial court may set the restitution amount and payments in a reasonable amount based upon evidence regarding the earnings the juvenile may reasonably be expected to make and may set a commencement date for the payments so long as the court provides a reasonable amount of time for the juvenile to obtain employment. If the juvenile is thereafter unable to obtain appropriate employment or to otherwise afford the monthly payment despite reasonable efforts, the juvenile may present that evidence in his or her defense in any enforcement proceeding.[1]
J.A.B. was adjudicated guilty of battery on January 22, 2007, and placed on juvenile probation for one year. The trial court reserved jurisdiction to determine a proper amount of restitution J.A.B. should pay to the victim and thereafter held two evidentiary hearings on that issue. At the hearings, held in February and March 2007, the victim of the battery testified to various hospital bills and other expenses and losses she incurred and paid as a result of the injuries she received from the battery.
J.A.B., who was eighteen years old at the time of these restitution hearings, testified that she was unemployed and pregnant. Her child was due in May 2007. She was attending an adult high school and hoped to graduate in December and then to proceed to a two-year trade school. She planned to take six weeks off from her schooling after the baby was born. She had never held a job before, although she had applied unsuccessfully at three companies when she was approximately five months pregnant. She had no disability or health conditions that would prevent her from working once she had the baby. The court questioned the parties regarding the current minimum wage. The State responded that the federal minimum wage was $5.15 per hour, and the state minimum wage was $6.67.[2]
J.A.B. was living with her expected baby's grandmother (apparently the paternal grandmother) but received no support from the expected baby's father. She was receiving government assistance in the form of $180 per month in cash assistance plus food stamps. She also had a cell phone with a bill of approximately $60 per month that was paid by her mother or her uncle.
Based upon this evidence, the trial court awarded restitution in the amount of $1479.09. Given that J.A.B.'s baby was due within two months, the court deferred any payment of restitution until July 1, *1152 2007, approximately six weeks after J.A.B.'s due date. The court required J.A.B. to then pay restitution at the rate of $50 per month, reasoning that this amount could be paid given the resources available to J.A.B. even if J.A.B. worked only part time at minimum wage.
On appeal, J.A.B. does not contest the total amount of restitution ordered. Indeed, the amount ordered was supported by competent, substantial evidence. Rather, J.A.B. argues that the trial court abused its discretion in ordering her to pay this amount on the specified payment schedule because she contends she is unable to afford it. We disagree.
Juvenile restitution is governed by section 985.231(1)(a)(6), Florida Statutes (2005), which permits the court to order restitution "in a reasonable amount or manner to be determined by the court."[3] This statute does not delineate who bears the burden of proof on the issues involved, but this court has previously looked to the general restitution statute for adults, § 775.089, Fla. Stat. (2006), to determine issues related to juvenile restitution that are not specifically addressed in the juvenile statute. See T.J.N. v. State, 977 So.2d 770, 771 n. 1 (Fla. 2d DCA 2008).
Section 775.089(7) provides that the court must determine restitution based upon a preponderance of the evidence, with the burden of demonstrating the amount of the restitution resting on the State but the burden of proving any inability to pay resting with the defendant.[4] If competent, substantial evidence supports the amount of the restitution award, we review the amount and any payment schedule under an abuse of discretion standard. J.D.H. v. State, 931 So.2d 241, 242 (Fla. 5th DCA 2006).
Notably, although section 775.089(6) previously required a court ordering restitution in an adult case to consider both the losses sustained by the victim and the defendant's financial resources and needs in setting the amount, see § 775.089(6), Fla. Stat. (1993), subsections 775.089(6)(a) and (b) now require the court to consider only the amount of the loss sustained by the victim. The financial resources and needs of the defendant may only be considered at the time of enforcement. See, e.g., Hector v. State, 784 So.2d 1207, 1208 (Fla. 2d DCA 2001). This amendment to the statute was enacted in 1995. See ch. 95-160, § 1, at 1623, Laws of Fla. The juvenile statute, however, continues to provide that restitution "may not exceed an amount the child and the parent or guardian could reasonably be expected to pay or make." § 985.231(1)(a)(1)(a), Fla. Stat. (2005); see also § 985.437(2), Fla. Stat. (2007).
It is well established that a court can order a delinquent child to pay restitution without a showing of present ability to pay. K.T.M v. State, 969 So.2d 542, 543 (Fla. 2d DCA 2007); R.S.M. v. State, 910 So.2d 361, 362 (Fla. 2d DCA 2005); R.D.S. v. State, 844 So.2d 720, 720-21 (Fla. 2d DCA 2003); A.J. v. State, 677 So.2d 935, 938 (Fla. 4th DCA 1996). Instead, the court must determine what the child may reasonably be expected to earn upon finding suitable employment and must base the restitution amount on those expected earnings. Id.
*1153 In the adult context, there is no doubt that the court may set a restitution amount and a payment schedule based upon what the adult may reasonably afford or reasonably be expected to afford, even if the adult is unemployed. See, e.g., Bain v. State, 642 So.2d 578 (Fla. 5th DCA 1994). Indeed, the opinion in Bain was based upon the prior version of section 775.089(6), which required the court to consider the defendant's financial resources when setting the amount, as the current juvenile statute requires.
In the juvenile setting, however, some prior opinions of this court have held that a court cannot order a juvenile to pay restitution commencing on a date certain if the juvenile is unemployed, but rather must make any payment contingent upon the juvenile finding suitable employment, with the order requiring only that the juvenile expend reasonable efforts to do so. In R.S.M., 910 So.2d 361, the trial court ordered R.S.M. to pay $2160 in restitution upon his release from commitment at the rate of $50 per month, apparently without any indication of when payments had to commence. We affirmed the amount of the award and the rate of payment but reversed to the extent the trial court failed to make specific provisions regarding when payments would commence. We instructed the trial court on remand to amend the restitution order to state that the obligation to make payments commenced upon the child obtaining earnings from employment and to provide that the child must "make all reasonable efforts" to find such employment. Id. at 362-63; see also R.D.S., 844 So.2d at 721 (affirming portion of juvenile restitution order that required a seventeen-year-old, who was apparently not committed into custody, to pay $1635.29 in restitution at the rate of $25 per month but reversing the portion of the order that required payments to begin on July 1, 2002, approximately two months after the date restitution was imposed; requiring restitution payments commence "once R.D.S. obtains suitable employment that will enable him to comply with the order, for which he must make all reasonable efforts to obtain").
Our holdings in R.S.M. and R.D.S. were supported by citation to another opinion of this court, L.J.H. v. State, 627 So.2d 593 (Fla. 2d DCA 1993), a short opinion that cited a First District case, J.M.H. v. State, 589 So.2d 394 (Fla. 1st DCA 1991), for the proposition that juvenile restitution payments must be conditioned upon the juvenile obtaining earnings from employment that would enable her to comply. In J.M.H., as in R.S.M., the child was adjudicated delinquent and committed into custody. The circuit court orally ordered J.M.H. to pay restitution totaling $1453 at the rate of $25 per month. The First District affirmed the amount of the restitution and the rate of payment as orally pronounced, but the court reversed the written restitution order with instructions to issue a more accurate order specifically stating that the obligation to commence paying restitution would begin upon J.M.H. obtaining employment. J.M.H., 589 So.2d at 395-96; see also J.A.M. v. State, 601 So.2d 278 (Fla. 1st DCA 1992) (affirming amount of $3800 in restitution and payment schedule of $200 per month imposed on juvenile as a condition of community control but reversing that portion of order that provided a date certain to commence payments and remanding for entry of an order that made payments contingent upon securing employment).
There is nothing in section 985.231 that requires this result. Indeed, case law under the prior adult provision, which similarly required the court to consider ability to pay in setting restitution, permitted a court to set the restitution in an amount the defendant could be expected to pay, *1154 even though the defendant was unemployed. See, e.g., Bain, 642 So.2d 578. Of course if the defendant thereafter was unable to pay, any enforcement mechanism allowed the defendant to avoid penalty by establishing that he or she was unable to pay despite reasonable efforts to do so.
It appears that the rationale of J.M.H., the case first holding that payment must be conditioned upon the juvenile obtaining employment, was fueled in part by the concern that the juvenile was committed into custody and, because the order failed to specify a date for payment, the order might be read as requiring immediate payment. Nevertheless, the same holding has now been applied in cases like R.D.S. and J.A.M., in which the juvenile is not held in custody, and even under circumstances when the court deferred the first payment date for a specified, reasonable period of time.
Given the language of the juvenile restitution statute, the policies underpinning the statute, and the wide discretion generally afforded to judges in awarding restitution, we now conclude that a hard-and-fast rule prohibiting a judge from setting a commencement date for monthly payments of juvenile restitution and requiring that such payments can only be ordered contingent upon the juvenile actually obtaining employment is inappropriate. Section 985.01(1)(c) states that the purposes of the juvenile justice statutes include:
To ensure the protection of society, by providing for a comprehensive standardized assessment of the child's needs so that the most appropriate control, discipline, punishment, and treatment can be administered consistent with the seriousness of the act committed, the community's long-term need for public safety, the prior record of the child, and the specific rehabilitation needs of the child, while also providing whenever possible restitution to the victim of the offense.
An order requiring payment of restitution only after the juvenile obtains employment is difficult to enforce and places the onus on the State to continue to pursue the child if payment is not forthcoming. The child is left with no feeling of urgency to comply with the restitution provisions, while the victim is left uncompensated. Moreover, R.S.M., R.D.S., and L.J.H. appear to overlook the fact the statute also places a portion of the burden for restitution on the child's parent, whose ability to pay may also be taken into account in determining restitution and who may be required to cosign a promissory note for the amount awarded. § 985.231(1)(a)(1)(a), (6).
In this case, there was evidence that J.A.B., although unemployed and pregnant, intended on returning to school six weeks after having the baby. J.A.B. was eighteen and suffered from no disability. She had no significant living expenses and was receiving some government assistance. She had a monthly cell phone bill in excess of the monthly amount of restitution, which she testified was regularly paid by her mother and her uncle. The court considered all of this evidence and decided not to require J.A.B. to immediately commence payment of the restitution amount, or to require a payment that would require full-time employment. Rather, the court deferred any payment until more than six weeks after J.A.B.'s anticipated due date and in an amount that could be easily paid with part-time work. This restitution was required as a direct result of J.A.B.'s crime, in which she battered the victim to the extent the victim required transportation by ambulance, medical treatment, and physical therapy. The trial court's order is reasonable under the circumstances and certainly not an abuse of discretion.
To the extent R.S.M., 910 So.2d 361; R.D.S., 844 So.2d 720; and L.J.H., 627 *1155 So.2d 593, suggest that a court cannot make a similar restitution award, with payment commencing upon a date certain but in a manner that provides the unemployed child a reasonable opportunity to obtain employment that will provide the child the ability to pay the amount ordered, we recede from those cases. We therefore affirm the restitution order that requires J.A.B. to make periodic payments beginning on a date certain. We conclude that the First District's opinion in J.M.H., 589 So.2d 394, is distinguishable because that case involved a child who was committed into custody and a restitution order that appeared to require immediate payment, and therefore we do not certify conflict with that case. However, we find the First District's opinion in J.A.M., 601 So.2d 278, indistinguishable from this case and therefore certify conflict with J.A.M.
Affirmed; conflict certified.
NORTHCUTT, C.J., and FULMER, WHATLEY, CASANUEVA, STRINGER, DAVIS, SILBERMAN, KELLY, VILLANTI, WALLACE, LaROSE, and KHOUZAM, JJ., Concur.
NOTES
[1] Associate Senior Judge David Levy participated on the panel that requested this court consider this matter en banc to reach this result. Because he is not an active member of this court, however, he cannot formally participate in this en banc opinion.
[2] There was no objection to the court effectively taking judicial notice of these figures. The court expressly relied upon the lower figure in setting the restitution amount and payment schedule.
[3] Section 985.231(1)(a)(6) was the statute in effect at the time J.A.B. committed her offense, but the statute has since been repealed. A similar provision now appears in section 985.437(2), Florida Statutes (2007), which became effective January 1, 2007. Ch.2006-120, §§ 46-47, 131, at 1159-62, 1207, Laws of Fla.
[4] But see K.T.M v. State, 969 So.2d 542, 543 (Fla. 2d DCA 2007) (reversing restitution order where neither party presented evidence regarding the child's ability to pay the award).